DANIEL S. SILVERMAN (SBN 137864)
dsilverman@roll.com
DANIEL A. BECK (SBN 204496)
dbeck@roll.com
ROLL INTERNATIONAL CORP.
LEGAL DEPT.
11444 West Olympic Blvd., 10th Floor
Los Angeles, California 90064-1557
Telephone:   310-966-5700
Facsimile:   310-966-5758

Attorneys for Defendant
Michael Weinman

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | **Case No.  LA09-14429-SB** |
| MICHAEL WEINMAN<br>NESSA WEINMAN | Chapter 7 |
| | Adversary no. 2:09-ap-01622-SB |
| Debtors | **DEFENDANT MICHAEL WEINMAN'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)** |
| METALS USA BUILDING PRODUCTS, LP, | **[DECLARATION OF MICHAEL WEINMAN FILED CONCURRENTLY]** |
| Plaintiff, | Hon. Samuel L. Bufford |
| v. | |
| MICHAEL WEINMAN, | Hearing: |
| Defendant. | Date:      September 22, 2009<br>Time:      11:00 a.m.<br>Place:     Roybal Courthouse<br>              255 East Temple Street |

{032455.1}

DEFENDANT MICHAEL WEINMAN'S
MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................2

II.  LEGAL STANDARD FOR NONDISCHARGEABILITY
     EXCEPTIONS ON ..........................................................................3

III. ALLEGATIONS OF THE FIRST AMENDED COMPLAINT ................3

IV.  THE SERVICE AGREEMENT BETWEEN
     PLAINTIFF AND WCCR..................................................................5

V.   THE FIRST AMENDED COMPLAINT FAILS TO STATE
     A CLAIM......................................................................................8

     A.   Plaintiff Fails To Allege Facts Sufficient To State A Claim
          Under 11 U.S.C. § 523 (a)(2)(A) ..........................................8

     B.   Plaintiff Fails To Allege Facts Sufficient To State A Claim
          Under 11 U.S.C. § 523(a)(4)................................................10

          1.   Plaintiff Has Not Alleged Any Fraud or Defalcation
               While Acting In A Fiduciary Capacity ...............................10

          2.   Plaintiff Has Not Alleged Any Embezzlement....................12

          3.   Plaintiff Has Not Alleged Any Larceny .............................13

     C.   Plaintiff Fails To Allege Facts Sufficient To State A Claim
          Under 11 U.S.C. § 523 (a)(6)..............................................14

     D.   Plaintiff Fails To Allege Facts Sufficient To State A Claim
          For Constructive Trust ........................................................16

VI.  CONCLUSION............................................................................16

{032455.1}

i

DEFENDANT MICHAEL WEINMAN'S
MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT

# TABLE OF AUTHORITIES

## <u>Cases</u>

<u>Allstate Life Ins. Co. of New York v. Guerrerio (In re Guerrerio)</u>
    143 B.R. 605, 610 (Bankr. S.D.N.Y. 1992) ................................. 13

<u>Branch v. Tunnell</u>
    14 F.3d 449, 454 (9th Cir. 1994) ................................................ 6

<u>Cooper v. Pickett</u>
    137 F.3d 616, 627 (9th Cir. 1997) .............................................. 20

<u>Gleason v. Ihaw</u>
    236 U.S. 558, 35 S. Ct. 287, 59 L. Ed. 717 (1915) .................... 3

<u>Grogan v. Garner</u>
    498 U.S. 279, 111 S. Ct. 654, 661, 112 L.Ed. 2d 755 (1991) ..................... 3

<u>In re Caulfield</u>
    192 B.R. 808, 818 (Bankr. E.D.N.Y. 1996) .............................. 13

<u>In re Eisaman</u>
    387 B.R. 219, 222 (N.D. Ind. 2008) (Rule 9(b) ..................... 9, 10

<u>In re Jercich</u>
    238 F.3d 1202 (9th Cir. 2001) ................................................. 14

<u>In re Littleton</u>
    942 F.2d 551, 555 (9th Cir. 1991) ............................................ 12

<u>In re Marvin</u>
    139 B.R. 202, 205 (Bankr. E.D. Wis. 1992 ............................... 3

<u>In re Mercer</u>
    169 B.R. 694 (Bkrtcy. W.D. Wash. 1994) ................................ 14

<u>In re Rubin</u>
    875 F.2d 755, 759 (9th Cir. 1989) ............................................ 8

In re Schultz
    46 B.R. 880, 884-85 (Bankr. Nev. 1985) ............................................... 12, 13

Kearns v. Ford Motor Co.
    567 F.3d 1120, 1126 (9th Cir. 2009) ........................................................ 10

Lewis v. Scott (In re Lewis)
    97 F.3d 1182, 1185 (9th Cir. 1996) ..................................................... 10, 11

Lockerby v. Sierra
    535 F.3d 1038, 1040-1041 (9th Cir. 2008) ................................................ 14

Matter of Miller
    156 F.3d 598, 602-603 (5th Cir. 1998) ..................................................... 13

Mortgage Guar. Ins. Corp. v. Pascucci (In re Pascucci)
    90 B.R. 438, 444 (Bankr. C.D. Cal. 1988) ................................................. 8

Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert)
    141 F.3d 277, 281 (6th Cir. 1998). .......................................................... 3

Sprewell v. Golden State Warriors
    266 F.3d 979, 988 (9th Cir. 2001) ........................................................... 11

Vess v. Ciba-Geigy Corp.
    317 F.3d 1097, 1106 (9th Cir. 2003) ........................................................ 10

## Statutes

11 U.S.C. § 523 ........................................................................................... 2, 3

11 U.S.C. § 523 (a)(2)(A) ...................................................... 1, 8, 9, 10, 14

11 U.S.C. § 523 (a)(4) ...................................................... 1, 10, 11, 12, 13, 14

11 U.S.C. § 523 (a)(6) ........................................................... 1, 8, 14, 15, 16

Federal Bankruptcy Rule 7009 ............................................................... 9

| {032455.1} | iii | DEFENDANT MICHAEL WEINMAN'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT |

Federal Rules of Civil Procedure 9(b) ....................................9, 10, 12, 13, 14, 16

Federal Rules of Civil Procedure 12(b)(6) ................................... 1, 2, 6

## **Other**

Schwarzer et al., Federal Civil Procedure Before Trial
    § 9:212.1 (Rutter Group) .............................................................. 6

Thomas J. Salerno & Jordan A. Kroop
    Bankruptcy Litigation And Practice: A Practitioner's Guide, Third
    Edition§ 8:22[C][13][b] (2006) ................................................... 16

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 22, at 11:00 a.m. or as soon thereafter as this matter may be heard, in Courtroom 880 of the United States District Court for the Central District of California, 255 East Temple Street, Los Angeles, California, before the Honorable Samuel L. Bufford, United States Bankruptcy Judge, Defendant and Debtor Michael Weinman ("Defendant") will move and hereby does move to dismiss the claims asserted by Plaintiff Metals USA Building Products, LP ("Plaintiff") in its First Amended Complaint to Determine Dischargeability of Debt ("FAC"). Central District Local Bankruptcy Rule 9013-1(f) requires a written response to be filed and served at least 14 days before the hearing.

This motion is based on the grounds that the FAC fails to allege facts sufficient to state claims pursuant to 11 U.S.C. § 523(a)(2)(A), 532(a)(4), 523(a)(6), or for a constructive trust. See Fed. R. Civ. P. 12(b)(6).

This motion is supported by this notice of motion and motion, the attached memorandum of points and authorities, the concurrently-filed Declaration of Michael Weinman and its attached exhibit, such additional evidence and argument as may be presented at the hearing on this motion, all of the pleadings, files and records in this proceeding, and such other evidence as may later be submitted.

Dated: August 24, 2009            ROLL INTERNATIONAL
                                           CORPORATION LEGAL DEPARTMENT


                                  By: /s/ Daniel A. Beck
                                    Daniel A. Beck
                                    Attorneys for Defendant
                                    MICHAEL WEINMAN

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Plaintiff's initial Complaint in this action attempted to cast a garden-variety contract dispute as a series of egregious torts (embezzlement, fraud, larceny), thereby seeking to render the dischargeable alleged debt as nondischargeable pursuant to 11 U.S.C. § 523. In response, Defendant filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), demonstrating that Plaintiff's Complaint failed as a matter of law to allege an exception to discharge [Docket No. 6]. Plaintiff implicitly conceded the merits of Defendant's motion to dismiss, asking Defendant if he would take his motion off calendar so Plaintiff could filed an amended complaint. Defendant agreed.

On August 3, 2009, Plaintiff filed its First Amended Complaint ("FAC") [Docket No. 11]. Try as it might to add facts to plead around the governing contract, the FAC exhibits the exact same deficiencies as the original Complaint. Nowhere does the FAC allege facts remotely sufficient to state the asserted statutory causes of action. Instead, Plaintiff alleges (at most) that Defendant's company, West Coast Custom Rooms ("WCCR"), has failed to perform pursuant to certain obligations which were established by the parties' contract. A copy of that contract, the Service Agreement between Plaintiff and WCCR, is attached as Exhibit A to the Declaration of Michael Weinman, filed concurrently herewith. As demonstrated therein, the Service Agreement directly governs Plaintiff's allegations that WCCR did not remit certain customer payments to The Home Depot, Inc., and did not comply with the lead management program, at Defendant's alleged direction.

Plaintiff has resorted to relying on unsupported legal conclusions in order to dress up and mischaracterize these basic contract claims as grievous torts. Like the

original Complaint, Plaintiff's FAC fails to allege facts sufficient to state an exception to discharge of debt, however, and its claims should be dismissed without leave to amend, as Plaintiff has demonstrated its inability to state a viable claim.[1]

## II.

## LEGAL STANDARD FOR NONDISCHARGEABILITY EXCEPTIONS

"It is a well recognized principle in bankruptcy law that exceptions to discharge are strictly construed against the objecting creditor and in favor of the debtor.  This is based on the strong policy of the Bankruptcy Code of providing a debtor with a 'fresh start.' "  In re Marvin, 139 B.R. 202, 205 (Bankr. E.D. Wis. 1992 (citing Gleason v. Ihaw, 236 U.S. 558, 35 S. Ct. 287, 59 L. Ed. 717 (1915)).

As the party seeking a determination of nondischargeability, the Plaintiff bears the burden of proving all elements of its claims by a preponderance of the evidence, and the Court construes § 523 strictly against the Plaintiff and liberally in favor of the Defendant.  See Grogan v. Garner, 498 U.S. 279, 111 S. Ct. 654, 661, 112 L.Ed. 2d 755 (1991); Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert), 141 F.3d 277, 281 (6th Cir. 1998).

## III.

## ALLEGATIONS OF THE FIRST AMENDED COMPLAINT

The FAC alleges that Plaintiff has an agreement with The Home Depot, Inc. ("Home Depot") under which Plaintiff sells products to Home Depot customers, which are installed by "third party contractors and installers working as agents of [Plaintiff]." FAC, ¶ 6.  Plaintiff alleges that Defendant is a contractor who, through his affiliate West Coast Custom Rooms, Inc. ("WCCR"), installed Plaintiff's products at the residence of Home Depot customers (the "Home Depot

---

[1]    Defendant disputes each of the allegations of the FAC, but for purposes of this motion to dismiss, treats the allegations as presumed to be true.

Program"). Id., ¶ 7. "Pursuant to WCCR's agreement and arrangement with Metals USA," WCCR was required to collect payment from Home Depot customers, on Home Depot's behalf, for installations." Id., ¶ 8. "WCCR was then to remit payment to Home Depot, who would subsequently issue payment to Metals USA. WCCR would then be paid directly by Metals USA." Id. Plaintiff contends that "WCCR and Weinman fully understood at all times that they was [sic] acting as agent for Metals USA and Home Depot, and that all customers with whom they dealt under the Home Depot Program were Home Depot customers." Id. Moreover, "any monies collected by WCCR were done so in its fiduciary agency capacity exclusively for forwarding to Home Depot." Id. Through its participation in the Home Depot Program, WCCR was required to make periodic reporting of jobs and customers that WCCR serviced under the Home Depot Program. Id., ¶ 9.

According to Plaintiff, "WCCR charged and collected substantial fees from Home Depot customers related to the sales and installation of Metals USA's products pursuant to the Home Depot Program." Id., ¶ 10. Plaintiff alleges that "Weinman knew such funds were the property of Home Depot, and were collected and held by him as the agent and fiduciary of Metals USA and Home Depot in connection with the Home Depot Program." Id. However, Defendant instead allegedly "misappropriated, diverted and/or redirected a substantial portion of these fiduciary funds for the benefit of WCCR and/or Debtor Michael Weinman, personally." Id., ¶ 11. As a result, Plaintiff is required to pay funds directly to Home Depot. Id.

Further, on information and belief, Plaintiff alleges that "Michael Weinman also diverted customer leads that were given to WCCR as part of the Home Depot Program, and improperly dealt directly with such customers outside the Home

Depot Program, for sales of products competitive with those of Metals USA." Id., ¶ 12.

The FAC alleges four acts of purported misconduct. *First*, at Defendant's direction WCCR allegedly charged a customer "BL" in the amount of $6,300 on February 5, 2009, pursuant to a contract entered into between the customer and WCCR on January 29, 2009. Id., ¶ 14. WCCR then informed Plaintiff on February 9, 2009 that it would no longer be performing services under the Home Depot Program, and never provided services to customer BL. Id. *Second*, WCCR allegedly diverted a customer lead abbreviated "LL" from the Home Depot Program in January of 2009, collecting payments of $7200 for services that were not performed. Id., ¶ 15. *Third*, WCCR allegedly diverted a customer lead abbreviated "JF" from the Home Depot Program, collecting payments of approximately $17,000 for services that were not performed. Id., ¶ 16. *Fourth*, on or about September of 2008, WCCR allegedly diverted a customer lead abbreviated "JL" from the Home Depot Program, collecting funds for a deposit and permit, but performing no work thereafter. Id., ¶ 17. According to Plaintiff, "WCCR falsified records to indicate that customer JL had cancelled his contract under the Home Depot Program, so that WCCR could improperly benefit from such Home Depot customer." Id.

### IV.

### THE SERVICE AGREEMENT BETWEEN PLAINTIFF AND WCCR

Plaintiff's FAC repeatedly references the written contract which governs this dispute, but deliberately avoids attaching that agreement or describing its provisions. A copy of the September 12, 2004 Service Agreement between Plaintiff and WCCR (the "Service Agreement") is attached as exhibit A to the Declaration of Michael Weinman, filed concurrently herewith. It is appropriate for the Court to consider the Service Agreement in ruling on a motion to dismiss

because the FAC refers to the Service Agreement (FAC, ¶ 8), it is central to Plaintiff's claim, and its authenticity is not legitimately questioned. See Schwarzer et al., Federal Civil Procedure Before Trial, § 9:212.1 (Rutter Group) (court may consider documents referred to in complaint but not attached); see also Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994) ("As it makes sense and comports with existing practice, we hold that documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss").

The Service Agreement incorporates an attached Program Agreement between Home Depot U.S.A., Inc. and Metals U.S.A. Building Products, L.P., dated August 9, 2004 (the "Home Depot Agreement"). (Service Agreement, ¶ 1.) The Service Agreement provides, *inter alia*, that:

- WCCR agreed to comply with Home Depot's lead management system.[2] (Service Agreement, ¶ 2(h).)
- WCCR was to remit customer payments to Home Depot pursuant to the terms of the Home Depot Agreement.[3] (Home Depot Agreement, ¶ 2.4.)

---

[2] Specifically, "Contractor, in its performance under this Agreement and the Home Depot Agreements, shall fully comply with and participate in the Home Depot lead management system known as the "Measure Comp Reservation System", or any other lead or customer management system implemented by Home Depot or Metals. Contractor agrees to diligently and timely record and update all customer lead and customer progress information as outlined in Home Depot's Measure Comp operations manual, or as otherwise directed by Home Depot or Metals." (Service Agreement, ¶ 2(h).)

[3] Specifically, "[SERVICE PROVIDER] shall also collect and remit to Home Depot customer deposits at the times and in the amounts prescribed by Home Depot from time to time. All invoices shall be made in the name of Home Depot

- WCCR agreed that it would not divert any sales or business opportunities from the Hope Depot Program.[4] (Service Agreement, ¶ 13.)
- The parties "agree that their relationship is that of independent contractors, and that the employees of one party are not under any circumstances the employees of the other party. . . . Contractor acknowledges and agrees that it is not an agent of Metals, shall in no way hold itself out as an agent of Metals, and shall have no authority to bind Metals." (Service Agreement, ¶ 17.)

The Service Agreement thus explicitly governs both (1) the proper payment process for installation jobs; and (2) the proper management of leads, which are the two legal obligations of which Plaintiff's claims consist.[5] See FAC, ¶¶ 10-17.

Furthermore, the Service Agreement provides that the parties' relationship was as **<u>independent contractors</u>**, and that **<u>WCCR was not Plaintiff's agent</u>**

---

and all payments shall be made directly to Home Depot in accordance with procedures prescribed by Home Depot." (Home Depot Agreement, ¶ 2.4.)

[4] Specifically, "Contractor agrees that during the term of this Agreement it shall not sell any products other than the Products, or perform any services other than the Services, to or on behalf of actual or prospective customers contacted or sales leads generated in the Locations, or with whom Contractor communicates during its performance under this Agreement or the Home Depot Agreements. . . . Contractor agrees that it will not divert from Home Depot or Metals any sales or business opportunities generated as a result of this Agreement or the Home Depot Agreements." (Service Agreement, ¶ 13.)

[5] Moreover, the parties' liability is stringently limited for all claims "arising out of any performance of, or failure to perform" duties under the Agreement, absent proof of fraud or gross negligence. No special, consequential, indirect, incidental, punitive or exemplary damages are permitted. (Service Agreement, ¶ 7.)

(Service Agreement, ¶ 17), refuting Plaintiff's unsupported, conclusory and fallacious allegations that WCCR was its agent and had a fiduciary relationship with it.

## V.

## THE FIRST AMENDED COMPLAINT FAILS TO STATE A CLAIM

Plaintiff's FAC asserts the following four purported causes of action:

- 11 U.S.C. § 523(a)(2)(A) – false pretenses, false representation, or actual fraud.
- 11 U.S.C. § 523(a)(4) – fraud or defalcation while acting in a fiduciary capacity, embezzlement, and/or larceny.
- 11 U.S.C. § 523(a)(6) – willful and malicious injury.
- Constructive fraud.

Plaintiff's garden-variety contract allegations are not sufficient to state any of these claims. They should, therefore, be dismissed.

### A. Plaintiff Fails To Allege Facts Sufficient To State A Claim Under 11 U.S.C. § 523(a)(2)(A).

Section 523(a)(2)(A) provides for the nondischargeability of any debt to the extent obtained by "false pretenses, a false representation, or actual fraud." The elements of a claim under 523(a)(2)(A) are:

(1) a representation of fact by the debtor, (2) that was material, (3) that the debtor knew at the time to be false, (4) that the debtor made with the intention of deceiving the creditor, (5) upon which the creditor relied, (6) that the creditor's reliance was reasonable, and (7) that damage proximately resulted from the misrepresentation.

In re Rubin, 875 F.2d 755, 759 (9th Cir. 1989) (citing Mortgage Guar. Ins. Corp. v. Pascucci (In re Pascucci), 90 B.R. 438, 444 (Bankr. C.D. Cal. 1988)).

Plaintiff fails to allege **any** of these required elements, beginning with the first and most central:  A representation of fact by the debtor.  Nowhere does the FAC allege any specific representation of fact by the Defendant, Mr. Weinman (or, for that matter, by WCCR).  Nor does the FAC allege facts showing that such a representation was material, known by Defendant to be false, made with the intention of deceiving Plaintiff, reasonably relied on by Plaintiff, or identify the damages resulting.  In fact Plaintiff's FAC is devoid of any factual allegations which bear the slightest resemblance to a fraud claim.  That is because Plaintiff has not alleged a fraud claim at all; Plaintiff has alleged a basic contract claim.

The FAC fails to fix this deficiency, which Defendant's prior motion to dismiss had identified.  Instead, Plaintiff only alleges in conclusory fashion that "[s]pecifically, the reporting provided by Weinman and WCCR to Metals USA, Weinman's deliberate failure to disclose material facts, and the statements made by Weinman to Metals USA regarding the status of WCCR projects under the Home Depot Program, constitute false representations of fact and omissions of material fact by Weinman[.]"  (FAC, ¶ 21.)  Nowhere does the FAC identify with specificity any such false representations or reporting, nor explain what the Defendant actually stated to Plaintiff and why those statements were false.  Nor does the FAC explain why or how Defendant was under any duty to disclose facts to Plaintiff, what that duty consisted of, and how exactly the duty was breached.

Plaintiff's claim under Section 523(a)(2)(A) must be pled in compliance with the stringent particularity requirements of Fed. R. Civ. P. 9(b).[6]  <u>See</u> <u>In re Eisaman</u>, 387 B.R. 219, 222 (N.D. Ind. 2008) (Rule 9(b) applies to all claims under Section 523(a)(2)(A)).  Pursuant to Rule 9(b), "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct

---

[6]    Pursuant to Federal Bankruptcy Rule 7009, Fed. R. Civ. P. 9 applies to adversary proceedings.

charged." Vess v. Ciba-Geigy Corp., 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997)); see also Kearns v. Ford Motor Co., 567 F.3d 1120, 1126 (9th Cir. 2009) (affirming dismissal of amended complaint because "Kearns failed to articulate the who, what, when, where, and how of the misconduct alleged."). Rather than alleging false statements with the factual detail required by this authority, Plaintiff's FAC merely asserts that some unspecified "reporting" by Weinman and/or WCCR was false or omitted material facts. That does not remotely satisfy the requirements of Rule 9(b) for alleging a fraudulent representation.

This case is on all fours with the facts of In re Eisaman: "At most there is only an allegation concerning an understanding as to how part of the loan proceeds were to be used, which was not observed. While those allegations might be sufficient to suggest a breach of contract, they are not sufficient to allege fraud." Id. at 223.

Because Plaintiff's FAC does not allege facts sufficient to state a claim under Section 523(a)(2)(A), in compliance with Fed. R. Civ. P. 9(b), it should be dismissed.

**B.    Plaintiff Fails To Allege Facts Sufficient To State A Claim Under 11 U.S.C. § 523(a)(4).**

The FAC alleges that Defendant has violated 11 U.S.C. § 523(a)(4) by committing fraud or defalcation while acting in a fiduciary capacity, embezzlement, and/or larceny. (FAC, ¶ 24.) The FAC again fails to allege facts sufficient to state any such claim.

**1.    Plaintiff Has Not Alleged Any Fraud or Defalcation While Acting In A Fiduciary Capacity.**

Plaintiff fails to allege a claim under the first prong of Section 523(a)(4) for two independent reasons. *First*, nowhere does Plaintiff allege facts indicating that

WCCR or Mr. Weinman owed Plaintiff any fiduciary duty. It is well-settled law that a claim for fraud or defalcation by a fiduciary under Section 523(a)(4) requires a technical or express trust that imposes the fiduciary duties. See Lewis v. Scott (In re Lewis), 97 F.3d 1182, 1185 (9th Cir. 1996) ("[T]he fiduciary relationship must be one arising from an express or technical trust that was imposed before and without reference to the wrongdoing that caused the debt."). The FAC alleges no facts resembling an express or technical trust.

Instead, Plaintiff substitutes the legal conclusion that a "fiduciary duty" was imposed upon Defendant and WCCR, as well as an "express trust that existed pursuant to sufficient words between the parties[.]" (FAC, ¶ 25.) Plaintiff again seeks to pretend its way past the reality which defeats its case: Plaintiff entered into a contract with WCCR, which directly governed the parties' relations. That Service Agreement explicitly provides that the relationship between WCCR and Plaintiff was as **independent contractors**, and unequivocally states that WCCR was **not the agent of Plaintiff**. (Service Agreement, ¶ 17.) That is what Plaintiff agreed to. Nowhere, in the extensive written contract, does anything remotely resembling an "express trust" or "fiduciary relationship" appear. Nowhere does the FAC allege any facts that might suggest the existence of such a relationship. Instead the Service Agreement explicitly and clearly defines the parties' relationship to exclude such a result. Their contractual relationship was the polar opposite of a "fiduciary trust." Plaintiff agreed to this relationship with WCCR, is bound by its agreement, and cannot now contrive false and contradictory allegations in trying to get the Court to look past it. In deciding a motion to dismiss, the Court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

Nor does the "trust fund doctrine," which the FAC cites in an effort to rectify this fatal defect, establish the existence of a fiduciary relationship sufficient to support the claim. (FAC, ¶ 26.) The exception provided by Section 523(a)(4) requires a <u>technical</u> or <u>express</u> trust that imposes the fiduciary duties "**before and without reference to the wrongdoing that caused the debt**." <u>In re Lewis</u>, 97 F.3d at 1185; <u>see also</u> <u>In re Schultz</u>, 46 B.R. 880, 884-85 (Bankr. Nev. 1985) (express trust requires "an explicit declaration of the creation of a trust, a clearly defined trust *res,* definite beneficiaries, and a clear intention to create a trust."). The wrongdoing alleged by the FAC thus cannot create the requisite fiduciary relationship based upon an express trust. Moreover, the FAC is devoid of any factual allegations which could establish that the Defendant diverted corporate assets in order to defraud WCCR's creditors more generally in connection with its bankruptcy petition.

*Second*, as discussed above, the FAC fails to allege any claim of fraud. Much less does the FAC plead such fraud in compliance with Fed. R. Civ. P. 9(b).

### 2. Plaintiff Has Not Alleged Any Embezzlement.

Embezzlement under Section 523(a)(4) requires three elements: "(1) property rightfully in the possession of a nonowner; (2) nonowner's appropriation of the property to a use other than which [it] was entrusted; and (3) circumstances indicating fraud." <u>In re Littleton</u>, 942 F.2d 551, 555 (9th Cir. 1991). Plaintiff fails to meet the first and second requirements, because it has failed to allege the taking of any property rightfully in its possession. Rather Plaintiff merely alleges a contractual interest in proceeds which WCCR was contractually obligated to deliver to Home Depot, after which Home Depot would be contractually obligated to pay Plaintiff. (FAC, ¶ 8; Home Depot Agreement, ¶ 2.4.) The customers' payments were not Plaintiff's property, regardless of whether Plaintiff suffered monetary loss when Defendant allegedly withheld those payments from Home

Depot, which in turn refused to pay monies owed to Plaintiff pursuant to the contract between Plaintiff and Home Depot.

Further, embezzlement requires that the property be obtained by actual fraud, which must be pled in accordance with Fed. R. Civ. P. 9(b). "The fraud required is fraud in fact, involving moral turpitude or intentional wrong, rather than implied or constructive fraud." In re Schultz, 46 B.R. at 889. Plaintiff independently fails to meet the third requirement for a claim of embezzlement, because the FAC does not allege fraud, as discussed above. Accordingly, Plaintiff has not alleged facts sufficient to state a claim for embezzlement.

### 3. Plaintiff Has Not Alleged Any Larceny.

Larceny under Section 523(a)(4) requires the debtor to have originally obtained possession of the property by unlawful means, rather than receiving it lawfully (such as pursuant to a contract).[7] See Matter of Miller, 156 F.3d 598, 602-603 (5th Cir. 1998) ("Since Miller came into possession of Abrams's proprietary information and trade secrets lawfully, embezzlement, rather than larceny, is the § 523(a)(4) term which applies."). A claim for larceny also requires pleading that the defendant had fraudulent intent to convert the property which it unlawfully seized. See In re Caulfield, 192 B.R. 808, 818 (Bankr. E.D.N.Y. 1996) (requiring a showing of fraudulent intent for larceny and embezzlement).

As with the other prongs of Section 523(a)(4), Plaintiff's FAC is devoid of any facts sufficient to state a claim for larceny. The FAC does not allege that Defendant unlawfully took possession of Plaintiff's property. Everything that WCCR obtained, it received pursuant to the Service Agreement. At most, the FAC alleges that Defendant did not pay certain funds to Home Depot in compliance

---

[7] For purposes of Section 523(a)(4), larceny is defined by federal common law. See Allstate Life Ins. Co. of New York v. Guerrerio (In re Guerrerio), 143 B.R. 605, 610 (Bankr. S.D.N.Y. 1992).

DEFENDANT MICHAEL WEINMAN'S
MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT

with the Service Agreement, and did not comply with the Home Depot lead management program – neither of which constitutes the taking of property owned by Plaintiff.  (FAC, ¶¶ 10-12.)  The customer payments which were to be made to Home Depot were not Plaintiff's property, nor were the Home Depot leads.  Instead, Defendant's conduct allegedly deprived Plaintiff of its expected payments from Home Depot pursuant to the Home Depot Agreement.  That is a breach of contract allegation, not larceny.

Furthermore, the FAC fails to allege Defendant's fraudulent intent in compliance with Fed. R. Civ. P. 9(b) – or even by ordinary pleading standards.

The holding of <u>In re Mercer</u>, 169 B.R. 694 (Bankr. W.D. Wash. 1994) is directly applicable here:  "Whether proceeding under § 523(a)(2)(A) or § 523(a)(4), fraudulent intent is an essential element of the plaintiff's case.  The Court concluded at the hearing and still concludes that the plaintiff has failed to produce any evidence in support of that element, and that **the dispute here as presented involves breach of contract and nothing more**."  <u>Id.</u> at 698 (emphasis added.)  The same is true of the allegations in Plaintiff's FAC.  Plaintiff's claim under Section 523(a)(4) should, therefore, be dismissed.

**C.      Plaintiff Fails To Allege Facts Sufficient To State A Claim Under 11 U.S.C. § 523(a)(6).**

An intentional breach of contract does not constitute the "willful and malicious injury" required to establish an exception to discharge under 11 U.S.C. § 523(a)(6) unless it is accompanied by malicious and willful tortious conduct.  <u>See</u> <u>Lockerby v. Sierra</u>, 535 F.3d 1038, 1040-1041 (9th Cir. 2008) (citing <u>In re Jercich</u>, 238 F.3d 1202 (9th Cir. 2001), "Something more than a knowing breach of contract is required before conduct comes within the ambit of § 523(a)(6), and <u>Jercich</u> defined that "something more" as tortious conduct.").  Moreover, "conduct is not tortious under § 523(a)(6) simply because injury is intended or 'substantially

14

likely to occur,' but rather is only tortious if it constitutes a tort under state law." Id. These principles are based on policy at the very heart of the Bankruptcy Code:

> Expanding the scope of § 523(a)(6) to include contracts that are intentionally breached whenever it is substantially certain that injury will occur would severely circumscribe the ability of debtors to "start afresh." Such an interpretation would conflict not only with the "fresh start" policy at the heart of the Bankruptcy Code, but also with the statutory scheme itself. The Bankruptcy Code expressly permits intentional breaches of contract that are substantially certain to result in injury.

Id. at 1042.

Here, Plaintiff's FAC alleges two basic types of purportedly wrongful conduct by Defendant, both of which constitute – at most – claims for intentional breach of contract rather a "malicious and willful injury" under § 523(a)(6). First, WCCR allegedly failed to remit to Home Depot all of the funds which Defendant received from customers, as WCCR was contractually required to do. (FAC, ¶¶ 10-11.) Second, WCCR allegedly diverted Home Depot leads, dealing with customers outside the Home Depot Program. (FAC, ¶ 12.) These are both ordinary breach of contract claims, not independent willful and malicious torts. WCCR's contractual obligation to remit the payments to Home Depot was established by the Service Agreement, in its incorporated Home Depot Agreement. (Home Depot Agreement, ¶ 2.4.) WCCR's contractual obligation to manage leads in compliance with the Home Depot lead management program was also established by the Service Agreement. (Service Agreement, ¶ 2(h).) These obligations arose from the **contract** itself, and the contractual legal duties imposed pursuant to them, not as independent torts.

Plaintiff's FAC alleges an intentional disregard of contractual obligations, but fails to allege conduct that is also intentionally tortious. Instead, the FAC presents a generic claim for knowing breach of contract. Accordingly, Plaintiff has failed to state a claim under 11 U.S.C. § 523(a)(6) ).

**D.     Plaintiff Fails To Allege Facts Sufficient To State A Claim For Constructive Trust.**

A properly pled fraud claim is required in order to state an alternative count of a constructive trust as an exception to discharge. <u>See</u>, <u>e.g.</u>, Thomas J. Salerno & Jordan A. Kroop, <u>Bankruptcy Litigation And Practice: A Practitioner's Guide, Third Edition</u>, § 8:22[C][13][b] (2006) (exceptions to discharge). As discussed above, Plaintiff fails to meet this pleading requirement, instead asserting a conclusory allegation that Defendant committed fraud, without stating any facts in compliance with Fed. R. Civ. P. 9(b). (FAC, ¶ 34.) The constructive trust claim should be dismissed.

## VI.

## <u>CONCLUSION</u>

For the reasons discussed above, all of Plaintiff's claims should be dismissed without leave to amend, as Plaintiff has not and cannot meet the pleading requirements to render a garden variety alleged contract breach – an otherwise dischargeable debt – as nondischargeable.

Dated:  August 24, 2009

ROLL INTERNATIONAL
CORPORATION LEGAL DEPARTMENT
By:___/s/___Daniel A. Beck_____
  Daniel A. Beck
  Attorneys for Defendant
  MICHAEL WEINMAN