DANIEL S. SILVERMAN (SBN 137864)
dsilverman@roll.com
DANIEL A. BECK (SBN 204496)
dbeck@roll.com
ROLL INTERNATIONAL CORP.
LEGAL DEPT.
11444 West Olympic Blvd., 10th Floor
Los Angeles, California 90064-1557
Telephone: 310-966-5700
Facsimile: 310-966-5758

Attorneys for Michael Weinman

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>MICHAEL WEINMAN<br>NESSA WEINMAN<br><br>Debtors<br><br>METALS USA BUILDING PRODUCTS, LP,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL WEINMAN,<br><br>Defendant. | **Case No. LA09-14429-SB**<br><br>Chapter 7<br><br>Adversary no. 2:09-ap-01622-SB<br><br>**DECLARATION OF MICHAEL WEINMAN IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**<br><br>[Fed. R. Civ. P. 12(b)(6)]<br><br>Hon. Samuel L. Bufford<br><br><u>Hearing:</u><br><br>Date: September 22, 2009<br>Time: 11:00 a.m.<br>Place: Roybal Courthouse<br>255 East Temple Street |

{032349.1}

DECLARATION OF MICHAEL WEINMAN

## Declaration of Michael Weinman

I, Michael Weinman, declare as follows:

1. I am the Defendant in this action and President of West Coast Custom Rooms, Inc. I have personal knowledge of the matters set forth herein, and would competently testify thereto under oath if called as a witness. I submit this declaration in support of Defendant Michael Weinman's Motion to Dismiss.

2. Attached to this declaration as <u>Exhibit A</u> is a true and correct copy of the Service Agreement between Metal USA Building Products, L.P. and West Coast Custom Rooms, dated September 12, 2004.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 20th day of August, 2009 in Los Angeles, California.

_____
Michael Weinman

**EXHIBIT "A"**

# SERVICE AGREEMENT

This Service Agreement (hereinafter "Agreement") entered into as of this ~~30th~~ 12th day of September 2004, by and between Metals USA Building Products, L.P., a Texas limited partnership with its offices at 227 S. Town East Blvd., Mesquite, TX 75149 (hereinafter "Metals"), and West Coast Custom Rooms, a Corporation with its principal place of business located at 786 Pinefalls Ave., Walnut, Ca. 91789 (hereinafter "Contractor").

WHEREAS, Metals has entered into that certain Program Agreement, Trademark and Service Mark License Agreement, and Mutual Nondisclosure Agreement with Home Depot U.S.A., Inc. and Homer TLC, Inc. (collectively "Home Depot") on or about August 9, 2004, which are attached hereto as Exhibit "A" and incorporated herein and made a part of this Agreement as if fully set forth herein (hereinafter collectively the "Home Depot Agreements"); and

WHEREAS, pursuant to the Home Depot Agreements, Home Depot has authorized Metals or its designees to be the service provider for selling, furnishing and installing the Metals products listed on Exhibit "B" hereto and related materials (collectively the "Products") to Home Depot customers of the Home Depot retail locations set forth on Exhibit "C" hereto or as may be directed by Home Depot to Metals and Contractor in writing (collectively the "Locations"), and offer display, promotional, training, educational, installation, sales documentation and customer support services to such customers as more fully set forth in the Home Depot Agreements and/or Exhibit "B" hereto (the "Services"); and

WHEREAS, Metals desires to retain the services of Contractor, and Contractor desires to furnish said services as hereinafter provided in fulfillment of Metals' obligations under the Home Depot Agreements at the Locations.

NOW THEREFORE, in consideration of the mutual promises set forth herein, the sufficiency of which is hereby acknowledged, the parties hereby agree as follows:

1. **Basic Obligations and Assumption of Duties Under Home Depot Agreements.** Contractor acknowledges that it is being retained as an independent contractor to fulfill all of Metals' obligations under the Home Depot Agreements at the Locations. Contractor represents that it has thoroughly read and reviewed the Home Depot Agreements, is fully aware of the obligations of Metals pursuant to the Home Depot Agreements, and is fully able and willing to perform all Metals' obligations thereunder at the Locations. Contractor agrees that any duties, limitations, indemnifications, liabilities, and restrictions imposed upon Metals under the Home Depot Agreements are hereby imposed upon and expressly assumed by Contractor, as if Contractor was a party to the Home Depot Agreements, whether or not such matters are also addressed in whole or in part herein. Contractor agrees that all rights and remedies available to Home Depot under the Home Depot Agreements are specifically incorporated herein by reference and are available to Metals with respect to Contractor's obligations under this Agreement and the Home Depot Agreements, as if such rights and remedies were fully set forth herein. Contractor agrees to use its good faith best efforts to sell the Products and perform the Services, and in its performance of this Agreement and fulfillment of Metals' obligations under the Home Depot Agreements.

2. **Additional Contractor Responsibilities.** In addition to those obligations and responsibilities imposed by the Home Depot Agreements and assumed by Contractor herein, Contractor further agrees as follows:

   (a) Contractor will use its good faith best efforts to perform all additional actions reasonably requested of it by either Metals or Home Depot in connection with the Products and the Services, consistent with the terms and spirit of the Home Depot Agreements and this Agreement.

   (b) Contractor and its agents, employees, representatives and subcontractors shall take all actions necessary and appropriate to remain properly insured and licensed, and in good standing, in all applicable specialty classifications and in compliance with any and all bonding requirements.

   (c) Contractor shall be solely responsible for obtaining any and all permits and/or licenses required in connection with the Products and/or Services, this Agreement or the Home Depot Agreements.

   (d) Contractor shall at all times comply with all federal, state, county, and municipal laws, executive orders, ordinances, rules and regulations applicable to sale of the Products and performance of the Services, and the duties it performs under this Agreement and the Home Depot Agreements.

   (e) Contractor shall pay, accrue and remit any and all taxes of every kind or character whatsoever that may now or hereafter be imposed by or payable to any governmental authority as a result of the operation of Contractor's business in connection with this Agreement and the Home Depot Agreements, including but not limited to ad valorem, license, franchise, occupation, income, sales and use taxes. Contractor shall know the tax consequences of its performance of this Agreement and the Home Depot Agreements, and shall file all reports and returns, and secure all necessary licenses and permits with respect to such taxes. Contractor's further tax obligations are as set forth in Exhibit "E" hereto.

   (f) Contractor shall at all times cause its agents, employees and subcontractors to sell the Products and perform the Services in a prompt, neat, courteous, and workmanlike manner in accordance with all applicable laws, ordinances, rules, regulations, to promptly respond to all customer complaints in a professional manner, and to honor all warranties and guarantees applicable to the Products and Services.

   (g) Contractor shall undertake to ensure that all orders are filled and work completed consistent with promised or established completion dates. In addition, Contractor shall maintain properly trained agents, employees, and subcontractors for sale of the Products and provision of the Services.

(h) Contractor, in its performance under this Agreement and the Home Depot Agreements, shall fully comply with and participate in the Home Depot lead management system known as the "Measure Comp Reservation System", or any other lead or customer management system implemented by Home Depot or Metals. Contractor agrees to diligently and timely record and update all customer lead and customer progress information as outlined in Home Depot's Measure Comp operations manual, or as otherwise directed by Home Depot or Metals.

(i) Contractor agrees to immediately notify Metals, in writing, in the event Contractor or one of its agents or subcontractors breaches any of the terms or conditions set forth in this Agreement or the Home Depot Agreements. Such notice shall be in such detail as to specifically advise Metals of the date, location, nature and magnitude of the breach.

3. <u>Term and Termination</u>. This Agreement shall be effective from the date first above written and shall continue in force for so long as the Home Depot Agreements are in force, (the "Term"), unless earlier terminated in accordance with the provisions set forth below.

(a) <u>By Metals</u>. Metals may terminate this Agreement either in whole or in part, (i) immediately upon written notice to Contractor in the event Metals determines Contractor has breached its noncompetition or nondiversion obligations in paragraph 13 of this Agreement, or its dispute resolution obligations in paragraph 21(a) of this Agreement, (ii) upon written notice to Contractor in the event that Home Depot terminates any of the Home Depot Agreements, which termination will be effective as of the date of Home Depot's termination, (iii) upon thirty (30) days' advance written notice to Contractor for any reason whatsoever, with or without cause, or (iv) upon written notice to Contractor if Contractor breaches or fails to observe or perform any provision of this Agreement or the Home Depot Agreements, and such breach or nonperformance is not cured within ten (10) days of such notice.

(b) <u>By Contractor</u>. Contractor may terminate this Agreement (i) upon written notice to Metals if Metals breaches or fails to observe any material provision of this Agreement and such breach or failure is not cured within thirty (30) days of written notice to Metals of such breach or failure, (ii) upon ninety (90) days' advance written notice to Metals for any reason whatsoever, with or without cause, or (iii) immediately upon written notice to Metals in the event Metals has breached its dispute resolution obligations in paragraph 21(a) of this Agreement.

(c) Except as otherwise provided herein, at the time of termination and to the extent of the termination, the parties shall be released from any and all future obligations under this Agreement except those obligations which by their nature or by reasonable implication are intended to survive such termination. After termination, Contractor shall abide by any post-termination obligations set forth in the Home Depot Agreements. The parties agree that either party's exercise of its right to terminate under Section 3(a) or Section 3(b) shall not constitute a breach of or default under this Agreement by that party.

(d) Except as otherwise provided herein, any termination of this Agreement shall not affect either Contractor's or Metals' pre-termination obligations hereunder and shall be without prejudice to enforcement of any undischarged obligations existing at the time of termination.

(e) In addition, either party may terminate this Agreement immediately by written notice to the other party if such other party (i) makes a general assignment for the benefit of creditors, (ii) files a voluntary petition in bankruptcy or is the subject of any voluntary or involuntary bankruptcy, insolvency, reorganization or similar proceedings, (iii) becomes the subject of any proceeding or action whereby a receiver, custodian, trustee, examiner or liquidator is appointed with respect to such party or its assets, or (iv) becomes unable to pay its debts as they become due in the ordinary course of business, or becomes insolvent pursuant to any legal definition.

(f) After termination, Contractor shall, unless otherwise requested by Metals in writing, complete all jobs outstanding, pending or commenced pursuant to the Home Depot Agreements, and the terms of this Agreement and the Home Depot Agreements shall continue to apply to such post-termination actions. After termination, and except to the extent necessary to complete post-termination actions and obligations, Contractor shall immediately cease any use of and return to Metals any materials bearing the Metals or Home Depot name or logo.

4. <u>Indemnification By Contractor</u>. Contractor shall indemnify and hold harmless Metals and/or Home Depot, their respective parent and subsidiary companies and corporate affiliates, as well as their directors, officers, employees, agents, successors, and assigns from any suits, claims, injuries, losses, damages, costs or expenses of whatever nature (including reasonable attorneys' fees and expenses) arising out of or relating to (i) Contractor's breach of any of its obligations, duties, representations or warranties in this Agreement, (ii) the actions and omissions of Contractor in connection with its performance of this Agreement and the Products and Services provided by Contractor hereunder, and/or (iii) Contractor's assumption and/or performance of duties and obligations under the Home Depot Agreements. This indemnity and hold harmless agreement shall include, without limitation, any claims made or damages alleged by third parties or Home Depot against Metals with respect to acts or omissions of Contractor or the duties and obligations owed to Home Depot by Metals under the Home Depot Agreements and assumed by Contractor under this Agreements. CONTRACTOR'S INDEMNIFICATION OF METALS HEREIN SHALL INCLUDE, BUT NOT BE LIMITED TO, CLAIMS ALLEGING METALS' OWN NEGLIGENCE OR GROSS NEGLIGENCE.

5. <u>Indemnification by Metals</u>. Metals shall indemnify Contractor and its parent and subsidiary companies and corporate affiliates, as well as their directors, officers, employees, agents, successors and assigns from any suits, claims, injuries, losses, damages, costs or expenses of whatever nature (including reasonable attorneys' fees and expenses) arising out of (i) Metals' breach of any of its obligations, duties, representations or warranties in this Agreement, and (ii) the actions and omissions of Metals in connection with its performance of this Agreement.

6. **Warranties.** Contractor will offer to prospective customers only those warranties that are specifically set forth in the written Metals warranties provided by Metals to Contractor, and shall not make any additional representations or warranties concerning the Products or Services. Contractor will be responsible for taking commercially reasonable actions and for documenting its sales transactions as necessary to limit any warranties, remedies or guaranties that conflict with or expand upon the Product and Services warranties attached to the Home Depot Agreements, including but not limited to (i) the implied warranties of merchantability and/or fitness for a particular purpose, (ii) any conflicting or more expansive express warranties, and/or (iii) any ability of any customer to seek or recover damages or remedies more expansive than those available under this Agreement or the Home Depot Agreements, including but not limited to consequential or incidental damages, lost profits or exemplary or punitive damages. With respect to any Services provided by Contractor under this Agreement and the Home Depot Agreements, Contractor shall warrant to customers, and hereby does warrant to Metals, that such Services and its performance hereunder shall be free of defects in workmanship and quality for a period of one (1) year from the date of completion of such Services. If any claim is made that a defect exists or is revealed during this warranty period, Contractor agrees to promptly investigate and remedy such claim without further cost to the customer, Home Depot or Metals. If Contractor fails to promptly investigate or remedy such claim or defect, Metals reserves the right to take such action at Contractor's expense.

7. **Limitation of Liability.** Neither Metals nor Contractor shall be liable to each other for any special, consequential, indirect, incidental, punitive or exemplary damages arising out of any performance or, or failure to perform, this Agreement, absent proof of fraud or gross negligence. Notwithstanding the foregoing, this paragraph shall not in any way limit Contractor's liability to Metals, by indemnification or otherwise, for the full extent of losses or damages sought or imposed by third parties or Home Depot against Metals that arise out of or relate to (i) the acts or omissions of Contractor, or (ii) the obligations and duties in the Home Depot Agreements assumed by Contractor hereunder. Further, Metals' total liability to Contractor in any way arising out of or relating to this Agreement shall be limited to the amounts received by Metals under the Home Depot Agreements with respect to the Products and Services provided through Contractor. This allocation of liability represents the agreed and bargained-for understanding of the parties, and the compensation exchanged between the parties reflects such allocations.

8. **Insurance.** Contractor, at Contractor's expense, shall obtain and maintain in effect at all times during the term hereof insurance coverages in the type and amount set forth on Exhibit "F" hereto. Each such policy obtained and maintained pursuant to this paragraph shall name Metals and Home Depot as additional insureds. Contractor shall deliver to Metals certificates of such insurance at least fifteen (15) days prior to the effective date thereof, annually thereafter, and shall further promptly deliver to Metals any renewal certificate(s) pertaining to each such policy. Such insurance shall provide that it shall not be cancelled without at least thirty (30) days written notice of cancellation to Metals. Metals' obligations under this Agreement are conditional upon Contractor supplying to Metals satisfactory evidence of compliance with these insurance requirements.

9. Intellectual Property. In addition to observing and complying with the intellectual property obligations in the Home Depot Agreements, Contractor shall not take any action that may adversely affect the validity or enforceability of, and shall not alter or modify, the trade name, trademarks, service marks, copyrights, patents or other intellectual property rights of Metals or its parent or subsidiary companies or affiliates. Any goodwill associated with such use of the Metals name or logo shall inure solely to the benefit of Metals. Contractor agrees to use the names, logos, trademarks, service marks, copyrights, patents and other intellectual property of Metals or Home Depot only in such manner as is expressly authorized in the Home Depot Agreements or in writing by Metals.

10. Compensation. In consideration of Contractor's performance of its obligations hereunder, Metals shall pay Contractor the fees and compensation set forth on Exhibit "D" hereto, in the manner provided on Exhibit "D". All payments due to Contractor from Metals shall be subject to Metals' right of offset for (i) any amounts owed by Contractor to Metals under this Agreement or arising out of the Home Depot Agreements, or (ii) any amounts owed by Metals to Home Depot as a result of the acts or omissions of Contractor. Contractor will maintain its material purchases account with Metals within terms and pay all balances as they become due according to such terms, and grants Metals the right to offset any unpaid balance on Contractor's account with Metals that is more than ten (10) days past due against any amounts owed by Metals to Contractor under this Agreement.

11. Records and Documentation. Contractor shall maintain and retain the documents required under the Home Depot Agreements, and the audit rights of Home Depot under the Home Depot Agreements shall be available to both Home Depot and Metals. Contractor shall provide to Metals monthly reporting of its performance under this Agreement and the Home Depot Agreements in a format to be specified by Metals to Contractor. Contractor shall promptly comply with any other reasonable requests for reporting or documentation made by Metals or Home Depot. Contractor shall keep any documents and records relating to its performance under this Agreement or the Home Depot Agreement for a period of seven (7) years after termination of this Agreement, and its provision shall survive any such termination.

12. Confidentiality. In addition to observing and complying with the confidentiality obligations set forth in the Home Depot Agreements, Contractor agrees and acknowledges that during its performance of its obligations under this Agreement and the Home Depot Agreements, it will from time to time have access to and come into possession of materials, documents and information that is proprietary and confidential business information of Metals, including but not limited to Metals' financial information, sales and pricing information, marketing and promotional information and strategies, technical Product specifications and information, customer and supplier lists, or similar proprietary information (collectively the "Confidential Information"). Contractor agrees that during the term of this Agreement it will use the Confidential Information solely in connection with the performance of its duties and obligations under this Agreement and the Home Depot Agreements, and will not use such Confidential Information for any other purpose or disclose such Confidential Information to any third party or entity. Contractor agrees that, upon termination of this Agreement, it will promptly return the originals and any copies of Confidential Information to Metals, and will not after termination use the Confidential Information for any purpose and will not disclose the Confidential Information

in any manner. These obligations of Contractor shall survive the termination of this Agreement, and shall be deemed continuing.

13. Non-Competition / Non-Diversion. In addition to observing and complying with the noncompetition and nondiversion provisions in the Home Depot Agreements, Contractor agrees that during the term of this Agreement it shall not sell any products other than the Products, or perform any services other than the Services, to or on behalf of actual or prospective customers contacted or sales leads generated in the Locations, or with whom Contractor communicates during its performance under this Agreement or the Home Depot Agreements, or who might be otherwise referred to Contractor by or through Metals or Home Depot. Contractor agrees that it will not divert from Home Depot or Metals any sales or business opportunities generated as a result of this Agreement or the Home Depot Agreements. Contractor agrees that it will not sell, furnish or install products other than Products manufactured by Metals in connection with Contractor's performance under this Agreement or the Home Depot Agreements. Contractor agrees that all sales leads and opportunities generated as a result of this Agreement or the Home Depot Agreements are the sole property of Home Depot and are not to be used for any purpose other than in connection with the performance of this Agreement and the Home Depot Agreements, and that all customers with whom Contractor communicates during its performance under this Agreement or the Home Depot Agreements are deemed to be actual and prospective Home Depot customers.

14. Contractor Representations. Contractor hereby makes to Metals the representations and warranties set forth in Section 7.1(b) through (i), inclusive, in the Home Depot Agreements, as if such representations and warranties were fully set forth herein.

15. Force Majeure. Metals reserves the right, in the case of fire, earthquake, vandalism, malicious mischief, other casualty, war, civil commotion, embargo, government regulation or labor dispute, or any event beyond Metals' reasonable control, to suspend its performance of this Agreement or any provision herein with no liability whatsoever to Contractor.

16. Illegality. The invalidity or illegality of any provisions within this Agreement shall not affect the validity of any other term or provision of this Agreement, it being the intent of the parties to construe the unaffected provisions as closely as possible to their original meanings.

17. Independent Contractor Relationship. The parties agree that their relationship is that of independent contractors, and that the employees of one party are not under any circumstances the employees of the other party. Contractor shall be solely responsible for the payment of any and all federal, state, or local taxes with respect to its employees and any individuals performing work for Contractor hereunder. Contractor acknowledges and agrees that it is not an agent of Metals, shall in no way hold itself out as an agent of Metals, and shall have no authority to bind Metals.

18. Assignment. Contractor shall not assign its rights or delegate any duties under this Agreement or the Home Depot Agreement without the express written consent of Metals, except with respect to assignment to subcontractors solely for the installation of Products or

performance of repairs. Contractor acknowledges and agrees that it is fully responsible to Home Depot and Metals for the acts and omissions of such subcontractors under this Agreement and the Home Depot Agreements as if they were employees of Contractor.

19. Survival. Upon termination, all provisions of this Agreement shall remain in effect as to disputed matters connected with this Agreement or the Home Depot Agreements. Further, any continuing obligations herein that by their express terms or reasonable implication are intended to survive termination, shall in fact survive the termination of this Agreement, including but not limited to those obligations in paragraphs 4, 5, 7, 11, 12, 13, 21 and 22 herein. Any obligations, duties, restrictions and limitations in the Home Depot Agreements that survive termination of the Home Depot Agreements, and that are assumed by Contractor pursuant to this Agreement, as well as any rights and remedies in the Home Depot Agreement that are available to Metals hereunder, shall also survive any termination of this Agreement or the Home Depot Agreements.

20. Choice of Law. This Agreement, and Contractor's performance hereunder and pursuant to the Home Depot Agreements, shall be interpreted and enforced according to the laws of the State of Texas, exclusive of laws pertaining to conflicts of law.

21. Disputes; Arbitration. If any claim, controversy or dispute of any kind or nature whatsoever arises between the parties arising out of or relating to this Agreement, the Home Depot Agreement, or the Products or Services, Metals and Contractor agree to attempt to resolve such matter as follows:

(a) Metals and Contractor will first attempt to resolve such matter through informal negotiation and discussions between management from both parties. The parties designate the following individuals as their representatives for any such negotiation and discussions:

For Metals:  
Robert W. Frey  
(972) 882-8838  
(972) 882-8813 (fax)  
rfrey@metalsusa.com

For Contractor: WEST COAST CUSTOM ROOMS, INC  
RONALD ALBRECHT  
909.594.7547

Within five (5) business days of receipt of a written, faxed or e-mailed request by either party identifying a claim, controversy or dispute between the parties, each party shall submit a written report setting forth its position (along with relevant supporting documentation) to both of the above representatives. The representatives shall then have ten (10) days after receipt thereof to attempt to reach a resolution. Either party's failure to participate in this informal negotiation and discussion process in good faith shall be deemed to be a material breach of this Agreement and immediate grounds for termination under paragraph 3 herein, in addition to any damages suffered as a result of such breach and the imposition of arbitration costs and fees as set forth below.

(b) If the representatives cannot settle the matter through these discussions, then such matter shall be resolved by arbitration before a single arbitrator in Dallas, Texas selected by the American Arbitration Association and applying the commercial arbitration rules of that organization. The substantially prevailing party shall be entitled to an award of its attorneys' fees and expenses; provided, however, that any party failing to comply with its obligations under subparagraph 21(a) shall in any event be responsible for all arbitration costs and arbitrator's fees assessed to both parties by the AAA. Notwithstanding the foregoing, either party may cancel or terminate this Agreement in accordance with its terms and conditions without being required to follow the procedures set forth in this paragraph 21.

22. Notices. All notices contemplated hereunder shall be deemed given one (1) day after being sent by recognized overnight courier service, or three (3) days after mailing by certified or registered mail, return receipt requested, to the receiving party at the address below or such other address as such receiving party shall have subsequently provided the other party.

If to Metals:
Metals USA Building Products, L.P.
Attention:
227 S. Town East Blvd
Mesquite, TX 75149

With a copy to (which shall not constitute notice):
Metals, Inc.
Attention: General Counsel
One Riverway, Suite 1100
Houston, TX 77056

If to Contractor:
Contractor
Attention: WEST COAST CUSTOM ROOMS, INC
R. ALBRECHT
786 Pinefalls Ave.
Walnut, CA 91789

23. Entire Agreement; Modification; Waiver. This Agreement represents the entire Agreement between the parties hereto and supersedes any prior course of dealing and all prior oral or written negotiations, representations or agreements by or between the parties concerning the subject-matter hereof. This Agreement may not be modified except in writing executed by both parties. Provisions of this Agreement may be waived in whole or in part only by a writing signed by the party against whom enforcement of waiver is sought. Any failure by Metals to exercise any rights or remedies available hereunder shall not be deemed a waiver of such rights or remedies.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first written above.

**Metals USA Building Products, L.P.**      **Contractor**

                                                                                 WEST COAST CUSTOM ROOMS, INC

By: *[signature: John Hagena]*                By: *[signature: R E Culbert]* 10/12/04
Title: V.P.                                          Title: PRESIDENT

# EXHIBIT "D"

## FEES AND COMPENSATION

## PAYOUT EXHIBIT

### The Program Fee consists of two parts:
      12.0% Home Depot Fee
      <u>1.7%</u> Metals' Program Fee
      13.7% Total Fee

The Total Fee is charged against the total sales contract <u>before</u> state and local sales tax, if applicable. The Total Fee is deducted from the final payout.

### Advances on Signed Contracts:
    Contracts $10,000 up to $20,000 - a $3,000 Advance is made
    Contracts $20,000 and over - a $5,000 Advance is made

Advances will be paid out <u>after</u> Metals receives the original THD In-Home contract signed by the customer, which must be mailed to Metals <u>after</u> the rescission period has expired. Metals will independently confirm the contract directly with the customer through the use of customer surveys.

### Charge backs from Home Depot or Metals:

Any specific charge backs by Home Depot or Metals for any costs incurred or sales price adjustment made to resolve customer satisfaction issues will be deducted from current payouts. You will be notified via e-mail of any deduction.

### *Payout Example:*

| | |
|---|---|
| Contract Sales Amount | $16,400.00 |
| Advance Made | $3,000.00 |

| | |
|---|---|
| Contract Sales Amount | $16,400.00 |
| Payout Earned (86.3%) | $14,153.20 |
| Less: Earlier Advance | ($3,000.00) |
| Net Payout on Completion | $11,153.20 |

Metals, Inc:

By: _[signature]_
Title: _[signature]_

Contractor

WEST COAST CUSTOM ROOMS, INC.

By: _Bill Elliott_
Title: PRESIDENT

# PROGRAM AGREEMENT

Between

## HOME DEPOT U.S.A., INC.

And

## METALS U.S.A. BUILDING PRODUCTS, L.P.

Dated  Aug. 9th, 2004 , 2004

## PROGRAM AGREEMENT

This PROGRAM AGREEMENT ("Program Agreement"), is made and entered into as of **August 15, 2004**, (the "Effective Date"), among HOME DEPOT U.S.A., INC., a Delaware corporation ("Home Depot") and Metals U.S.A., Building Products, L.P., a Texas Limited Partnership ("SERVICE PROVIDER") (Home Depot and [SERVICE PROVIDER] being sometimes referred to in this Program Agreement collectively as the "Parties," and individually as a "Party").

### W I T N E S S E T H:

**WHEREAS**, Home Depot has established a program which will allow it to offer for sale and sell sunrooms, screen rooms, shade covers and pool cages products in select product/service categories in which Home Depot plans to expand its offerings;

**WHEREAS**, one of the central elements of this program is that the suppliers of such [THIRD PARTY BRANDED] products must be capable of successfully undertaking the selling, furnishing and installing of such third party branded products;

**WHEREAS**, Home Depot has determined, based upon [SERVICE PROVIDER]'s representations, that, in the product category of sunrooms, screen rooms, shade covers and pool cages products [SERVICE PROVIDER] and its subcontractors offer a potentially suitable array of capabilities to service Home Depot customers;

**WHEREAS**, it is Home Depot's intention to offer or market [SERVICE PROVIDER] products and services in Participating Home Depot stores and/or markets provided [SERVICE PROVIDER] has the necessary qualifications, capabilities and resources to supply and service such The Home Depot Stores;

**WHEREAS**, the purpose of this Program Agreement is to define the aforementioned program and the Parties' obligations and responsibilities thereunder; and

**WHEREAS**, certain capitalized words and phrases used in this Program Agreement are defined in Annex A to this Program Agreement.

**NOW, THEREFORE**, for and in consideration of the agreements set forth below, the Parties agree as follows:

### ARTICLE 1

### THE PROGRAM

**1.1** **Scope of the Program.** The sell, furnish and install program (the "Program") detailed herein shall refer to the relationship between Home Depot, on the one hand, and [SERVICE PROVIDER] on the other, pursuant to which Home Depot markets for sale at participating The Home Depot® stores ("Participating Home Depot stores"), sunrooms, screen rooms, shade covers and pool cages offered and sold from time to time by [SERVICE PROVIDER] and approved by Home Depot for inclusion in the Program (the "[SERVICE PROVIDER] Products and Services"), in each case on the terms and subject to the conditions set forth herein. A listing of current [SERVICE PROVIDER] Products and Services is attached as Exhibit 1.1 to this Program Agreement. The Program shall apply only to Participating Home

Depot stores and not to other Home Depot stores or other Home Depot owned or affiliated retail locations, whether now existing or hereafter established.

**1.2 Basic Obligations of the Parties.**

(a) Home Depot will provide on behalf of the Program:

(i) dedicated space in Participating Home Depot stores' retail showrooms for display of the [SERVICE PROVIDER] Products and Services to Participating Home Depot store customers who are potential purchasers of the [SERVICE PROVIDER] Products and Services;

(ii) services with respect to qualifying potential customers for the [SERVICE PROVIDER] Products and Services, completing sales lead information forms and transmitting sales leads to [SERVICE PROVIDER] in accordance with Program policies and procedures;

(iii) payment to [SERVICE PROVIDER], as applicable, of an agreed-upon percentage of revenue derived from sales of [SERVICE PROVIDER] Products and Services as provided herein.

(b) [SERVICE PROVIDER] will provide on behalf of the Program:

(i) design, construction, set-up and maintenance of [SERVICE PROVIDER] Products and Services displays in Participating Home Depot stores ("[SERVICE PROVIDER] Displays");

(ii) authorized employees or agents of [SERVICE PROVIDER] to man the [SERVICE PROVIDER] Displays See Attachment 1.2 Service Level Requirements ____ hours per week in each Participating Home Depot store. [SERVICE PROVIDER] and Home Depot shall mutually agree upon specific the days and times such employees and agents must be present at Participating Home Depot stores;

(iii) training to Participating Home Depot store sales personnel to more effectively market the [SERVICE PROVIDER] Products and Services and generate sales leads;

(iv) follow-up on all sales leads generated at Participating Home Depot stores;

(v) in-person residential sales calls to potential customers, including design consultation and price quotation;

(vi) procurement of final sales contracts for the [SERVICE PROVIDER] Products and Services (all sales of [SERVICE PROVIDER] Products and Services will be memorialized in contracts between the customers and Home Depot), the form of which contracts shall be specified by Home Depot, and in each case subject to final review and approval by authorized personnel at the applicable Participating Home Depot store;

(vii) all labor and materials (as an independent contractor in relation to Home Depot and at the sole expense of [SERVICE PROVIDER]) which are reasonably necessary to complete all customer orders for [SERVICE PROVIDER] Products and Services;

(viii) all follow-up service to address any customer complaints and/or warranty claims; and

(c) [SERVICE PROVIDER] will provide on behalf of the Program:

2

(i) such management, oversight, and operational support of or for [SERVICE PROVIDER] as may reasonably be required by Home Depot to guarantee [SERVICE PROVIDER]'s fulfillment of its obligations under this Program Agreement;

(ii) indemnification of Home Depot as further set forth under this Program Agreement.

The foregoing is intended only as a general description and overview of the Parties' respective contributions to the Program, and is qualified in its entirety by the specific provisions contained elsewhere in this Program Agreement and in the detailed program guidelines set forth as Exhibit 1.2 ("Program Guidelines"). The Program Guidelines are subject to periodic review and revision by Home Depot, provided, however, that (a) Home Depot shall provide at least thirty (30) days' advance written notice to [SERVICE PROVIDER] before such revisions take effect and (b) such revisions shall not alter any material term of this Program Agreement.

**1.3** **Contractual Relationships.** All sales to customers under the Program shall be between Home Depot and the customer. Home Depot, through Participating Home Depot stores, shall invoice the customer, and all checks, credit card payments and other payments from customers shall be made payable solely to Home Depot. The contractual role of [SERVICE PROVIDER] under the Program shall be that of independent contractors in relation to Home Depot, in exchange for which Home Depot will pay to [SERVICE PROVIDER] an agreed-upon percentage of all revenues collected from customers for the [SERVICE PROVIDER] Products and Services, as provided in Section 2.1. Participating Home Depot store.

**1.4** **Designation of Participating Home Depot Stores.** Attached to this Program Agreement as Exhibit 1.4 is a list of Participating Home Depot stores designated as Program participants as of the Effective Date. Home Depot intends, from time to time, to designate additional Participating Home Depot stores as Program participants, provided, among other things, [SERVICE PROVIDER] is ready, willing and able to offer and sell the [SERVICE PROVIDER] Products and Services at such additional Participating Home Depot stores and has the necessary qualifications, capabilities, financial resources and reputation (both national and local) to operate the Program at such additional Participating Home Depot stores. Home Depot will communicate regularly with [SERVICE PROVIDER] regarding its intended roll-out of the Program to additional Participating Home Depot stores and solicit [SERVICE PROVIDER]'s evaluation regarding the markets in which [SERVICE PROVIDER] is qualified to establish and operate the Program ("") in order to justify the further designation of The Home Depot® stores as "Participating Home Depot stores" as such term is defined below. The term "Participating Home Depot store" shall refer exclusively to Participating Home Depot stores that have been designated by Home Depot as Program participants; Participating Home Depot stores that are not Program participants shall be referred to herein as "Non-Participating Stores."

**1.5** **Designation of Home Depot Stores by Home Depot.** For each Participating Home Depot store designated by Home Depot following the Effective Date, Home Depot shall notify [SERVICE PROVIDER] of the designation of such Participating Home Depot store. Each such designation shall require specific approval by Home Depot as described in more detail in the Program Guidelines, Section 1.6 below and elsewhere in this Program Agreement.

**1.6** **Approval of [SERVICE PROVIDER] Requests for Designation of Home Depot Stores by Home Depot.** In each case in which [SERVICE PROVIDER] requests that Home Depot designate a particular The Home Depot store as a Participating Home Depot store, such designation shall be subject to approval by Home Depot in Home Depot's sole discretion. Upon receipt of [SERVICE PROVIDER]'s request designate a particular The Home Depot store as a Participating Home Depot store,, Home Depot

3

may, at its option, arrange an interview with the local managers of [SERVICE PROVIDER] or its subcontractors and may request an inspection of its facilities, interviews with employees and review of financial and other records that Home Depot deems relevant to the approval process. All local managers of [SERVICE PROVIDER] will be required to submit to background checks as described in more detail in the Program Guidelines. Home Depot's approval or rejection of [SERVICE PROVIDER]'s request may be based upon any criteria Home Depot deems relevant in its discretion, and may include, among other criteria: a [SERVICE PROVIDER]'s capitalization and ability to expand to meet demand for [SERVICE PROVIDER] Products and Services anticipated to be generated by the Program; ability to deliver [SERVICE PROVIDER] Products and Services in accordance with Program standards; proximity to the pertinent Home Depot store; evidence of compliance with relevant legal requirements; and cooperation with Home Depot in the investigation and approval process. Home Depot will notify [SERVICE PROVIDER] of its approval or rejection of [SERVICE PROVIDER]'s request.

## ARTICLE 2

## FINANCIAL MATTERS

2.1 **[SERVICE PROVIDER] Commission.** Home Depot shall pay [SERVICE PROVIDER] a commission of 88% of gross revenues (excluding sales taxes) actually collected from a customer as payment for the sale of [SERVICE PROVIDER] Products and Services under the Program (the "Commission"). Additional details pertaining to financial matters associated with the Program are detailed in the Program Guidelines.

2.2 **Costs and Expenses.**

(a) Home Depot will be responsible for transmitting customer leads it receives to [SERVICE PROVIDER], processing customer payments and fulfilling the other obligations of Home Depot hereunder and under the Program Guidelines. Provided, however, that [SERVICE PROVIDER] shall be responsible, at its sole expense, for obtaining a dedicated toll-free telephone number for use by prospective Home Depot customers inquiring about [SERVICE PROVIDER]'s product offerings under the Program.

(b) [SERVICE PROVIDER] will be responsible for all costs associated with designing, building, installing and maintaining the [SERVICE PROVIDER] Displays, other than as specified in Section 2.2(a); manning the [SERVICE PROVIDER] Displays during the initial 60-day period in each Participating Home Depot store as required by Section 1.2(b)(ii); educating Home Depot employees about the [SERVICE PROVIDER] Products and Services and training Home Depot employees on sales techniques to help generate interest in the [SERVICE PROVIDER] Products and Services at each Participating Home Depot store; responding to customer leads, including initial telephone response and in-person sales calls, design consultation, providing price quotations and procuring signed purchase orders; all labor, material, delivery and installation costs relating to the provision of the [SERVICE PROVIDER] Products and Services and fulfillment of the customer contracts; all labor, material, delivery, refund or other costs associated with customer complaints and/or warranty claims following the sale of the [SERVICE PROVIDER] Products and Services; and all other cost or expenses incurred in connection with the fulfillment of the [SERVICE PROVIDER]'s obligations under this Program Agreement, including the Program Guidelines. Provided, however, that the foregoing is not intended to be used by Home Depot as a mechanism to undertake activities outside the scope of the Program the cost of which, under the terms hereof, would be borne by the [SERVICE PROVIDER].

Ver. Interim-0903

2.3  **Reporting.** [SERVICE PROVIDER] shall provide Home Depot with regular reports analyzing [SERVICE PROVIDER]'s performance in generating leads and closing sales and such other reports as shall be mutually agreed upon by the Parties. Home Depot shall provide [SERVICE PROVIDER] with certain financial and operating reports as described in the Program Guidelines.

2.4  **Customer Invoicing and Payment.** [SERVICE PROVIDER] shall prepare and present to the customer for payment all invoices for [SERVICE PROVIDER] Products and Services, including sales taxes where applicable. All invoices shall be in a form created by Home Depot from time to time for use in the Program. [SERVICE PROVIDER] shall also collect and remit to Home Depot customer deposits at the times and in the amounts prescribed by Home Depot from time to time. All invoices shall be in the name of Home Depot and all payments shall be made directly to Home Depot in accordance with procedures prescribed by Home Depot.

2.5  **Pricing.** [SERVICE PROVIDER] shall be responsible for quoting prices to customers and securing signed customer purchase orders in the name of Home Depot and subject to final acceptance by Home Depot. The prices quoted by [SERVICE PROVIDER] shall be competitive and shall further reflect the cost savings inherent in the business model set forth under this Program Agreement in comparison to the prices charged by [SERVICE PROVIDER] for comparable goods and services offered by the [SERVICE PROVIDER] to its own customers outside the Program.

2.6  **Audit Rights.** Home Depot or its designees shall have the right at all times while this Program Agreement is in effect and for a period of three (3) years following any expiration or termination of this Program Agreement, to inspect, audit and copy all relevant books and records of [SERVICE PROVIDER] as it may reasonably request solely for the purpose of verifying its compliance with its obligations under this Program Agreement. Information in such books and records which are not related to the foregoing may be redacted. [SERVICE PROVIDER] acknowledges the Parties' understanding that any follow-on agreement between the Parties with respect to extending the Pilot Program past the pilot phase shall provide for Home Depot's audit right to remain in effect for 3 (three) years following any expiration of termination of the pertinent contractual agreement.

2.7  **Promotions.** From time to time, Home Depot may implement various store-wide or targeted promotions or purchase incentives applicable to the [SERVICE PROVIDER] Products and Services. Such promotions or purchase incentives may apply nationally, regionally, or only with respect to particular Participating Home Depot stores. Home Depot will notify [SERVICE PROVIDER] in advance of promotions and purchase incentives applicable to the [SERVICE PROVIDER] Products and Services. [SERVICE PROVIDER] shall participate in such promotions and purchase incentives to the extent consistent with this Program Agreement.

## ARTICLE 3

## RESTRICTIONS ON CERTAIN ACTIVITIES

3.1  **Obligations of Home Depot.** [SERVICE PROVIDER] acknowledges and understands that Participating Home Depot stores currently offer for sale and sell [INSERT DESCRIPTION OF PRODUCT] and that Home Depot intends to have Participating Home Depot stores continue to do so, whether such Participating Home Depot store is a Non-Participating Store or a Participating Home Depot store. Except in markets in which [SERVICE PROVIDER] has been designated by Home Depot to provide [SERVICE PROVIDER] Products and Services, wherein [SERVICE PROVIDER] shall be Home Depot's exclusive provider of [SERVICE PROVIDER] Products and Services for the duration of [SERVICE PROVIDER]'s presence in such markets pursuant to this Program Agreement, nothing herein